## Cohen v. Erie Indemnity Company

*Richard A. Weisbord*, for petitioner.
*Albert C. Gekoski*, for respondent.

KALISH, *J.*, February 26, 1980—

## I. BACKGROUND

This is a petition for a declaratory judgment. On January 1, 1975 at 2:15 a.m., a three car collision occurred on Bustleton Pike in Bucks County. It was stipulated that: one of the drivers, petitioner Richard Cohen, was operating his mother's business vehicle without her permission; at the time, petitioner was the "named insured" under his own policy of auto insurance with the Erie Indemnity Company; and the policy was in full force and effect. Erie's rejection of petitioner's claim under that policy has generated this action.

The issue presented for determination is whether a "named insured" is covered under his own insurance policy when he is driving a car without the owner's express or implied permission. More specifically, does the proviso clause of the Erie Indemnity policy in Part I(b) pertain to sections (b)(1) and (2) or only (b)(2)? The provision is stated in pertinent part, as follows:

"Persons Insured
The following are Insureds under Part I:
(a) With respect to the owned automobile,
(1) the named Insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a)(1) or (2) above;

(b) With respect to a *non-owned* automobile,

(1) the named Insured,

(2) any relative, but only with respect to a private passenger automobile or trailer; provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an Insured under (b)(1) or (2) above."

We hold that petitioner was covered by the Erie policy.

## II. DISCUSSION

It is well-established in Pennsylvania as in most jurisdictions, that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 Atl. 491 (1931); West v. MacMillan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 Atl. 104 (1930). If there is any doubt or ambiguity as to the meaning of a policy, such doubt or ambiguity will

be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202 (1953); Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613 (1947). If a policy is reasonably susceptible of two interpretations, it will be construed in favor of the insured in order not to defeat, without necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302 (1952).

The reason behind these uncompromising rules is that an insurance policy is almost always a contract of adhesion—one written by the insurer with no input from the insured, i.e., a lack of negotiation and disparity of economic power. It is drafted by persons expert in the use of "legalese," with terms often obscured and imposed upon the adhering party, who thinks he is buying more protection than the insurer actually intends to provide. In addition to the strict rules dealing with ambiguity, Pennsylvania courts have historically been unfavorable to exceptions or exclusions from coverage: see 1 Couch on Insurance 2d §15:47, especially in the case of a comprehensive liability policy, as is the one at issue. See, e.g., Miller v. Prudential Insurance Company of America, 239 Pa. Superior Ct. 467, 362 A. 2d 1017 (1976); Celley v. Mutual Benefit Health and Accident Association, 229 Pa. Superior Ct. 475, 324 A. 2d 430 (1974). Such provisions are to be clearly stated and strictly construed against the insurer.

On the other hand, where no real doubt or ambiguity exists, the court should not strain to locate one, nor, if an exception is clearly and unambiguously presented, should the court refuse to give it

effect. Thus the threshold question is whether there is ambiguity at all in the policy provision.

The only Pennsylvania case touching upon the subject matter is Shaw v. Sabo and Buckeye Union Casualty Co., 43 D. & C. 2d 645, 648 (C.P. Beaver, 1967). That case involves a provision substantially similar in language to, yet different in typography. from Erie's.[1]

In Shaw, the "provided" clause actually looks like a physical continuation of (b)(2). It is not set apart in any way to even indicate its applicability to both preceding subsections. In that respect it lends little support to petitioner's argument here. The court there found no real ambiguity—it simply applied the grammatical rule that a limiting clause which follows several expressions is restricted to its

---

1. "Persons Insured. The following are insureds under Part 1:

"(a) With respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured,

"(b) With respect to a non-owned automobile,

"(1) the named insured,

"(2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner;

"(c) Any other person or organization legally responsible for the use of

"(1) an owned automobile, or

"(2) a non-owned automobile, if such automobile is not owned or hired by such person or organization, provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such owned automobile or non-owned automobile."

last antecedent,[2] and held that the proviso modified only (b)(2).[3]

It is significant to note that the Shaw court was able to contrast that policy's section (c) proviso, which clearly states its application to both subsections, and to conclude that (b) would be similarly phrased if its intention were the same. On this theme see Farmers Insurance Co. of Washington v. U.S.F. & G. Co., 13 Wash. App. 836, 537 P. 2d 839 (1975), and Harleysville Mutual Casualty Company v. Nationwide Mutual Insurance Company, 248 S.C. 398, 150 S.E. 2d 233 (1966).

Respondent contends that two cases, not of this jurisdiction, are so factually on point that they must control the outcome of this case. It is true that Bright v. Ohio Casualty Insurance Company, 444 F. 2d 1341 (6th Cir. 1971), and State Automobile Mutual Insurance Company v. Williams, 268 Md. 535, 302 A. 2d 627 (1973), both concerned policy provisions almost exactly resembling the one at

---

2. See, 1 Couch on Insurance 2d §15:13; Buntz v. General American Life Insurance Company, 136 Pa. Superior Ct. 284, 7 A. 2d 93 (1939).

3. Though the Shaw provision is hardly susceptible of another interpretation without excessive strain, the same format was surprisingly given the opposite effect in Gray v. International Service Insurance Company, 73 N.M. 158, 386 P. 2d 249 (1963), where the court held the mid-line "provided" applicable to both subsections. But the apparent head-on collision of these two cases is disturbing only until one discovers that the real reason for the decision in Gray is that the "named insured" was driving a stolen vehicle. See discussion in State Automobile Mutual Insurance Company v. Williams, 268 Md. 535, 302 A. 2d 627 (1973).

issue here. The courts there held that the provisions were not ambiguous and that the alignment of the "provided" clause with the "With respect to" indicated that it was the intent of the parties that the requirement of owner's permission apply to both the "named insured" and to "any relative." The following comment by the court in State Automobile, at page 632, is especially noteworthy:

"We have outlined the holdings of all cases available on the issue presented to us . . . our survey of the cases has made it plain to us that it all comes down to a matter of intention as reflected by the overall typography, especially the positioning of the permission proviso."[4]

We disagree. It exalts form over substance. Construction by strict rules of grammar, spacing and positioning of the proviso clause, while deserving consideration, does not prevail over the reasonable intent of the parties as reflected by the entire instrument: Buntz v. General American Life Insurance Company, supra. Here, the reasonable intent was to provide comprehensive insurance for a named insured who diligently paid premiums in order to be secure in the knowledge that he was covered.

How can State Automobile say merely "intention" is reflected by typography, without labelling it the "insurer's intention," when obviously the insured intended more.

We choose to subscribe to the greater wisdom found in the reasoning of McMichael v. American

---

4. The same reasoning was recently adopted in Insurance Company of North America v. Black, 606 F. 2d 650 (5th Cir. 1979).

Insurance Company, 351 F. 2d 665, 667 (8th Cir. 1965),[5] which both Bright and State Automobile distinguish due to differences in typography.

"We believe that the spacing argument relied upon by the [insurer] is an extremely thin thread upon which to base a contention which deprives a named insured of coverage which he has reason to believe he has bargained for. The wording of (b)(2) reads exactly the same, however it may be spaced. There is nothing in the record to indicate that the spacing is intentional rather than inadvertent." McMichael, supra.

That the proviso clause was intended by the insurance company to encompass both (b)(1) and (b)(2) does appear relatively clear to this court who has already had the benefit of hearing argument on both sides. However, that this same clause, when read with the broad "coverage" provision at the very beginning of the policy, created an ambiguity for the named insured we are also certain. See, e.g., Daburlos v. Commercial Insurance Company of Newark, N.J., 521 F. 2d 18 (3d Cir. 1975). Besides as McMichael points out, it is not far-fetched for the named insured to expect that the insurer would want to extend broader coverage to him than to a relative who is a stranger to the company.

Finally, Pennsylvania law requires an insurer's compliance with an even stricter standard than usual in the case of exceptions or exclusions from

---

5. The American Insurance policy provision is as follows:
"(b)  With respect to a non-owned automobile,·
(1)  the named insured,
(2)  any relative but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner; . . ."

coverage. As was stated in Hionis v. Northern Mutual Insurance Company, 230 Pa. Superior Ct. 511, 517, 327 A. 2d 363, 365 (1974).

"When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it. Weissman v. Prashker, 405 Pa. 226, 233, 175 A. 2d 63 (1961). Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him. See, e.g., Frisch v. State Farm Fire and Casualty Co., 218 Pa. Super. 211, 275 A. 2d 849 (1971); Purdy v. Commercial Union Insurance Co. of New York, 50 Pa. D. & C. 2d 230, 235 (1970)."[6]

Even if we assume that the provision in question was clear and unambiguous, defendant had the burden of establishing that Richard Cohen was aware of the exclusion and its effect on him. Yet, Erie has made no attempt to sustain this affirmative burden. In Miller v. Prudential Insurance Company of America, 239 Pa. Superior Ct. 467, 362 A. 2d 1017, 1020-21 (1976), appellant argued that judgment on the pleadings would be improper because the issue of the insured's awareness would require proof outside the pleadings. But the court construed Hionis as holding, at 1020-21: ". . . that the insurance company should not be able to *avoid coverage* unless they established that the insured was aware of the exclusion." (Emphasis supplied.)

---

6. See also, Daburlos v. Commercial Insurance Company of Newark, N.J., supra, and Brokers Title Company v. St. Paul Fire and Marine Insurance Company, 466 F. Supp. 1174 (E.D. Pa. 1979).

As was true in Hionis and so aptly stated there, at p. 517:

"The plaintiff herein was a layman of apparently average intelligence whose only objective in obtaining insurance was the security of protecting the financial expenses he had incurred . . . The defendants opted to present no evidence. We do not believe that under the circumstances defendants could stand behind a policy limitation or exclusion without meeting the burden of proof of establishing the insured's understanding and intention to become so bound."

Thus, the controversial provision here is an example of draftsmanship acceptable in a bygone era but quite unacceptable today because instead of performing the function of clear communication, the policy does its best to avoid clarity. This is so especially when we consider that the coverage clause affirmatively states that Erie will pay on behalf of insured all obligations "arising out of the . . . use of the owned automobile or any non-owned automobile." See Miller v. Nationwide Insurance Co., 70 D. & C. 2d 338 (1975). Insurance policies should not be construed as a trap for the unwary.

Judicial temperament on this subject is typified by the following statement from Harr v. Allstate, 54 N.J. 287, 255 A. 2d 208, 217 (1969):

"It is clear that this court's approach to defenses to claims on insurance contracts has changed very substantially in recent years. Our expressions have come in a variety of issues and contexts, but all have indicated as their keystone the goal of greater protection to the ordinary policyholder untutored in the intricacies of insurance. We have realistically faced up to the fact that insurance policies are complex contracts of adhesion, prepared by the in-

surer, not subject to negotiation, in the case of the average person, as to terms and provisions and quite unintelligible to the insured . . . We have stressed, among other things, the aim that average purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations; that it is the insurer's burden to obtain, through its representatives, all information pertinent to the risk and desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, plain, clear and prominent to the layman." Miller v. Nationwide Insurance Company, supra, at 344, 345.

Accordingly, this court enters the following

## ORDER

And now, February 26, 1980, upon consideration of the petition for declaratory judgment, judgment is hereby entered in favor of petitioner, Richard I. Cohen, and petitioner's request for punitive damages is denied.