John **BREZAN**

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA.**

Civ. A. No. 80–2394.

United States District Court, E. D. Pennsylvania.

Feb. 25, 1981.

William M. Thomas, Allentown, Pa., for plaintiff.

Morton F. Daller, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

TROUTMAN, District Judge.

An exclusionary clause in an insurance policy, of which plaintiff and defendant, both now moving for summary judgment, dispute the meaning, provides in relevant part as follows:

Generally Excluded Charges:

(1) Occupational Injury or Disease Charges—charges incurred in connection with

(a) injury arising out of, or in the course of, *any* employment for wage or profit or

(b) disease *covered*, with respect to such employment, *by any workmen's compensation law*, occupational disease law or similar legislation.

Plaintiff urges the Court to apply the italicized phraseology concerning the workmen's compensation to not only the word

"disease" in subsection "b" but also to the word "injury" in subsection "a". Accordingly, plaintiff reasons, the proposed intercalary language of the policy would exclude only occupational injuries covered by workmen's compensation laws and, therefore, the insurance policy would not exclude costs which plaintiff incurred in the course of his employment and as a result of a motorcycle accident.

■ Interpretation of insurance contracts requires ascertainment of the intent of the parties as manifested in the language of the agreement, *Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co.*, 583 F.2d 650 (3d Cir. 1978), *Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974), which should be read to avoid ambiguity as long as the "plain language" of the contract permits. *C. H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479 (3d Cir. 1981), *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068 (3d Cir. 1980). Where the words are clear and precise, courts afford them their natural and ordinary meaning. *Tookmanian v. Safe Harbor Water Power Corp.*, 505 F.Supp. 920 (E.D.Pa.1981), *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672 (1958). The meaning of contract words should not be twisted to create vagaries or to produce ambiguity where none otherwise exists. *Gulf Oil Corp. v. Federal Power Commissioner*, 563 F.2d 588 (3d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978), *Anstead v. Cook*, 291 Pa. 335, 140 A. 139 (1927). Specifically, courts will not coerce a construction that "fasten[s] liability upon an insurer which, by the terms of the policy, it has not assumed". *Penn-Air, Inc. v. Indemnity Insurance Co. of North America*, 439 Pa. 511, 517, 269 A.2d 19 (1970), quoting *Standard Accident Insurance Co. v. Winget*, 197 F.2d 97 (9th Cir. 1952).

■ A policy provision is ambiguous if intelligent people would honestly differ as to the precise meaning and if more explicit language, if used, would place the meaning beyond reasonable question. *Consolidated Coal Co. v. Liberty Mutual Insurance Co.*, 406 F.Supp. 1292 (W.D.Pa.1976), *Celley v. Mutual Benefit & Health Association*, 229 Pa.Super. 475, 324 A.2d 430 (1972). If an ambiguity does appear the issues are resolved against the insurer, *Buntin v. Continental Insurance Co.*, 583 F.2d 1201 (3d Cir. 1978), *Rainbow Trucking, Inc. v. Ennia Insurance Co.*, 500 F.Supp. 96 (E.D.Pa.1980), *Burne v. Franklin Life Insurance Co.*, 451 Pa. 218, 301 A.2d 709 (1973), and exceptions to an insurer's general liability are strictly construed against it. *Bergholm v. Peoria Life Insurance Co.*, 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416 (1931), *C. H. Heist Caribe Corp. v. American Home Assurance Corp., supra, Slate Construction Co. v. Bituminous Casualty Corp.*, 228 Pa.Super. 1, 323 A.2d 141 (1974). A construction which seems "rational, probable and resulting in consequences which a prudent person would make will be preferred". *Tookmanian v. Safe Harbor Water Power Corp.*, at 921. *See also Berke v. Bregman*, 406 Pa. 142, 176 A.2d 644 (1962). Unambiguous language should be interpreted by the Court as a matter of law. *Brokers Title Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 610 F.2d 1174 (3d Cir. 1979), *Community College v. Society of Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977). Within this context the policy must be read "as a whole", *C. H. Heist Caribe Corp. v. American Home Assurance Co.*, at 481, and the Court "should look no further than the writing itself when asked to give effect to that understanding". *In re Estate of Breyer*, 475 Pa. 108, 379 A.2d 1305 (1977). *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001 (3d Cir. 1980).

■ Courts enforce but do not rewrite agreements into which parties enter. *Johnson v. Fenestra, Inc.*, 305 F.2d 179 (3d Cir. 1962). Plaintiff's theory overlooks both these principles and the fact that the two subsections are worded disjunctively. Clearly, the drafters intended to define "occupational injuries" and "occupational diseases" differently. Otherwise, the word "and" would have been used; or the definition of "occupational injury or disease

charges" would have been placed together in one definition. The purpose of separate treatment for the two terms can be discerned, and careful examination of the policy exclusions for occupational diseases and injuries unquestionably reveals the intent of the drafters, who in the first subparagraph desired to exclude occupational *injury*, which can usually be determined as job-related with little difficulty. Hence, the definition is broadly defined. Whether the etiology of a claimant's *disease* involves employment conditions usually poses a more perplexing problem. *See, for example, Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292 (E.D.Pa.1980) (asbestosis). Identification of the nexus between the employment and the disease may be elusive. To avoid disputes with claimants as to whether a person's employment caused a disease, the drafters of this contract used more narrowly tailored language to define the term "occupational disease". Unmistakably, the syntax of this exclusionary clause requires no judicial alteration to comprehend its meaning. Interpolation of the workmen's compensation language into the "occupational injury" portion of the clause would create an ambiguity where none presently exists. Plaintiff's injury occurred during the course of his employment; the exclusionary clause expressly disallows any compensation therefor. *See also Buntz v. General American Life Insurance Co.*, 136 Pa. Super. 284, 289, 7 A.2d 93 (1939) ("all phrases and sentences are to be construed according to the rules of grammar; and these require as a general thing, a limiting clause or phrase, following several expressions to which it might be applicable, to be restrained to the last antecedent").

Plaintiff also contends that, if an insurer seeks to deny benefits through the operation of an exclusionary clause, reliance thereon acts as an affirmative defense, which places the burden of proof on the insurer. *See Weissman v. Prashker*, 405 Pa. 226, 175 A.2d 63 (1961) and *Armon v. Aetna Casualty & Surety Co.*, 369 Pa. 465, 87 A.2d 302 (1952). Specifically, plaintiff argues that defendant must show that he, plaintiff, knew and understood the effect of the ex-

clusionary clause. *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974). Essentially plaintiff asserts that defendant's failure to explain the limitations of the policy estops it from invoking the clause to defeat plaintiff's claim.

In *Hionis, supra*, plaintiff purchased insurance to protect himself against loss to improvements made to his restaurant. The policy excluded reimbursement for improvements which he did not repair or replace following destruction thereof. The court construed the insurance policy to cover the total loss despite plaintiff's failure to replace destroyed improvements. The court, considering the legally untutored status of the plaintiff and the technical, unclear terms of the policy, concluded that the defendant should not be able to avoid coverage unless it could establish that plaintiff knew of the exclusion. *Id.* at 513, 327 A.2d 363. *See also Daburlos v. Commercial Insurance Co. of Newark*, 521 F.2d 18 (3d Cir. 1975).

However, in *Miller v. Prudential Insurance Co. of America*, 239 Pa.Super. 467, 362 A.2d 1017 (1976), the court acknowledged that this rule admitted of exceptions, including the circumstances where "the language of the policy is clear and unambiguous in declaring that other medical benefits will be deducted from eligible benefits under [the] policy". *Id.* at 469, 362 A.2d 1017. In *Brokers Title Insurance Co. v. St. Paul Fire & Marine Insurance Co., supra*, the Court of Appeals recognized another exception.

▮▮▮▮ When two parties with relatively equal bargaining positions negotiate for insurance, the insurer need not explain to the insured the exclusionary provisions thereof. In this situation the purpose of the *Hionis* rule, protecting consumers from the trammels of "adhesive" contracts, has been satisfied by the business knowledge and sophistication of the party purchasing the insurance. In *Brokers Title Insurance Co.* the insured was a professional title insurance broker who sought to avoid the effect of an unambiguous contract clause.

Similarly, in the case at bar the party which purchased the insurance, Bamburger's Department Store, the employer of plaintiff's wife, cannot be classified as a layman unschooled in legal argot. Moreover, the group insurance policy issued to the employer does not appear to be an adhesion contract. Typically, insurance companies and organizations, not individuals, enter into group insurance contracts. The organizations who purchase such policies have more bargaining power than individual consumers. Usually people with acumen in business dealings and some expertise in insurance represent these organizations. Consequently, the parties negotiate the coverage, price and terms thereof at arm's length. The rationale supporting the *Hionis* rule finds no opportunity for enhancement under these circumstances; hence the rule does not here apply. One court confronted with this question has so held. In *Weiss v. CNA*, 468 F.Supp. 1291 (W.D.Pa.1979), the insured sought recovery of major medical benefits under a group insurance policy. The insurance company denied liability on the basis of an exclusionary clause; the insured argued that the limitation did not apply because the insurer could not establish that the insured knew of the exclusion. Acknowledging the general applicability of the *Hionis* rule, the court distinguished the situation involving group insurance:

> Plaintiff obtained insurance through group policies issued to organizations [which] ... generally have more bargaining power than an individual has in negotiating for insurance coverage. The individual intends to rely on the organization to obtain the best coverage. Therefore, the need to protect the individual purchaser from overreaching by an insurance company is minimized.

*Id.* at 1293.

■ Moreover, an insurer has no duty to inform an *employee* covered by group insurance directly; rather the insurer must provide a copy of the master policy to the *employer*, who shoulders the responsibility for transmitting group insurance policy information to employees. *See Aetna Life Insurance Co. v. Messier*, 173 F.Supp. 90 (M.D.Pa.1959), *Layman v. Continental Assurance Co.*, 416 Pa. 155, 205 A.2d 93 (1965), *Peyton v. Equitable Life Assurance Society*, 159 Pa.Super. 318, 48 A.2d 145 (1946) (insurer and employer are primary parties to contract of group insurance) and *Hanaieff v. Equitable Life Assurance Society*, 371 Pa. 560, 92 A.2d 202 (1952) (employer acts as agent of employees in contracting for group insurance). Defendant had no legal duty to guarantee that the policy information reached members of the group and that they understood the terms and conditions thereof. As one court stated,

> [h]aving furnished to the party acting for and in behalf of the employees full and accurate information as to the terms of the contract it would make, the insurer would not be required to go further or be held responsible for the way in which the employer imparted the information to the employee for whom the employer was acting. If the employer failed in this duty, the employee might have a cause for complaint against his unfaithful representative, although he would have none against the third party with whom the representative dealt.

*Duval v. Metropolitan Life Insurance Co.*, 82 N.H. 543, 546, 136 A. 400 (1927). However, even if defendant had such a duty, requiring execution thereof in the group insurance context fails to enhance the salutory purposes of the *Hionis* rule and ignores the "realities of contract negotiations between two parties of relatively equal bargaining position[s]", *Brokers Title Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 610 F.2d at 1180, and the "practical difficulties which arise from the fact that one group policy may cover thousands of employees in several states." *Layman v. Continental Assurance Co.*, 416 Pa. at 162, 205 A.2d 93.

Admittedly, Pennsylvania courts have not yet decided whether the *Hionis* rule applies to group insurance policies. Consequently, federal courts must "predict" state law. *See Kohr v. Johns-Manville Corp.*, 87 F.R.D. 750 (E.D.Pa.1981). The Court of Appeals has "predicted" that Pennsylvania courts

will recognize an exception to the *Hionis* rule where the parties negotiate with relatively equal bargaining power. *Brokers Title Insurance Co. v. St. Paul Fire & Marine Insurance Co., supra.* In light of the decision of the Pennsylvania Superior Court in *Miller v. Prudential Insurance Co. of North America, supra,* the results in *Brokers Title Insurance Co.* and the case at bar seem fair and consistent. Accordingly, defendant's motion for summary judgment will be granted and plaintiff's motion for summary judgment denied.