SELECTED RISKS INSURANCE
COMPANY, Plaintiff,

v.

Anthony V. BRUNO and Lucy C. Bruno,
his wife, and Anthony Bruno, Jr.,
Defendants.

Civ. No. 81–0987.

United States District Court,
M.D. Pennsylvania.

Dec. 13, 1982.

John J. Aponick, Jr., Wilkes-Barre, Pa.,
for plaintiff.

John Barry Beemer, Scranton, Pa., for
defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff Selected Risks Insurance Company (Selected Risks) instituted this lawsuit on August 25, 1981 seeking a declaratory judgment, under 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure, that it is not obligated to afford either a defense or coverage to the Defendants in a pending state court action. Jurisdiction of the Court is founded upon diversity of citizenship between the parties, 28 U.S.C. § 1332(a).[1] Presently pending for the Court's consideration is a motion for summary judgment filed by the Plaintiff Selected Risks. For the reasons set forth below, the motion will be denied and summary judgment will be entered in favor of the Defendants.

## I. FACTS

A review of the materials submitted herein reveals the following facts to be undisputed.[2] Selected Risks issued a policy of homeowners insurance, effective June 28, 1979 to June 29, 1979, to Defendants Antho-

---

1. The Plaintiff is a New Jersey corporation with its principal place of business in that state; the Defendants are all citizens of the Commonwealth of Pennsylvania.

2. The recitation of the undisputed facts in this case is derived substantially from the Plaintiff's Statement of Material Facts (Document # 12), filed pursuant to Local Rule of Court 401.4.

ny V. Bruno and Lucy C. Bruno, his wife. It provided bodily injury liability coverage in the amount of fifty-thousand dollars ($50,000)[3] and medical payment coverage in the amount of one-thousand dollars ($1,000). Anthony Bruno, Jr., the son of Defendants Anthony and Lucy Bruno, was not a named insured in the policy but was an insured thereunder since at all relevant times he was a resident of his parents' household.[4] However, he was not involved whatsoever in the actual purchase of the insurance policy.

On June 20, 1979, Anthony Bruno, Jr. physically struck Joseph Whah who, as a result of the injuries sustained in this altercation, died on November 5, 1979. As a consequence of the events which occurred on June 20, 1979, Anthony Bruno, Jr. was convicted of the crime of simple assault in the Court of Common Pleas of Lackawanna County.[5] Thereafter, a civil suit was filed in the Lackawanna County Court by Elizabeth Cotter, the executrix of the estate of Joseph Whah, and others, against Anthony Bruno, Jr. and others, seeking monetary damages for the death of Joseph Whah.[6] The defense of the state court civil action was tendered to Selected Risks and the carrier entered its appearance on behalf of Anthony Bruno, Jr. after reserving its right to deny coverage under the policy.

As noted above, on August 25, 1981, Selected Risks filed the instant declaratory judgment action seeking, *inter alia,* a determination that it is not obligated to provide a defense in the state court proceedings. Specifically, in moving for summary judgment, Plaintiff relies upon the following exclusion in the Defendants' homeowners policy:

> "1. *Coverage E—Personal Liability and Coverage F—Medical Payments to others* do not apply to *bodily injury* or *property damage:*
> a. which is expected or intended by the *insured . . . .*" (emphasis in policy).

A supporting and reply brief was filed by the Plaintiff on November 1 and November 29, 1982, respectively, and the Defendants filed their brief in opposition to the Plaintiff's summary judgment motion, accompanied by an affidavit, on November 15, 1982. Thus, the matter is currently ripe for disposition by the Court.

## II. DISCUSSION

In support of its motion for summary judgment, Selected Risks contends that the deposition testimony of Anthony Bruno, Jr.[7] and his prior state court criminal conviction for simple assault establish, as a matter of law, that Anthony Bruno, Jr. "expected and intended" to cause bodily injury to Joseph Whah. Consequently, it is argued that the

---

Defendants appear to concur with Plaintiff's version of the facts and, in any event, since no counter-statement was filed as required by the local rule, Plaintiff's statement will be deemed to be admitted.

3. *Coverage E—Personal Liability* section provided:
"If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, we will:
a. pay up to our limit of liability for the damages for which the *insured* is legally liable; and
b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability." (emphasis in policy).

The policy earlier defined "bodily injury" as "bodily harm, sickness or disease, required care, loss of services and death resulting therefrom."

4. Specifically, the definitional section of the Homeowners policy provided:
"3. 'insured' means you and the following residents of your household:
a. your relatives
b. any other person under the age of 21 who is in the care of any person named above
. . . ."

5. See 18 Pa.C.S.A. § 2701 (1973).

6. See *Elizabeth Cotter, et al. v. Louis and Sistina Mariotti t/a/ Mariotti Lumber Co., Anthony Bruno, Carmen Grazious, and Old Forge Borough, a municipal corporation,* No. 81 Civ 3867, filed June 18, 1981.

7. Document # 11.

aforementioned policy exclusion is applicable and, therefore, Selected Risks may with impunity deny a defense and coverage to the Defendants in the pending state court civil suit.

Defendants concede that the criminal assault conviction "precludes Anthony Bruno, Jr., from controverting that when he struck Joseph Whah, he expected or intended bodily injury to be suffered by Whah." Defendants' Brief (Doc. # 14) at 3. They maintain, however, that the principles espoused in the Pennsylvania Superior Court's decision in *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974) prevent Selected Risks from asserting the previously cited exclusion as a ground for refusing a defense or coverage under the policy.

In *Hionis,* the Court held that "[e]ven where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him." 230 Pa.Super. at 516–17, 327 A.2d 363.[8] The *Hionis* rationale was recently reaffirmed on two occasions by the Pennsylvania Superior Court in *Kelmo Enterprises, Inc. v. Commercial Union Insurance Co.,* 285 Pa.Super. 13, 426 A.2d 680 (1981) and *Klischer v. Nationwide Life Insurance Co.,* 281 Pa.Super. 292, 422 A.2d 175 (1980). In *Klischer,* the Court reiterated the policy considerations underlying the doctrine:

> The major premise upon which *Hionis* rests is the vast inequality of bargaining power between the insurer and the typical purchaser of insurance. As a direct result of that disparity, the insurer may dictate the terms and conditions of the policy. Whether the policy is clear and precise or whether it is oblique and ambiguous, the disparity between the parties remains the same. Moreover, the insured's primary interest, which is obtaining the maximum coverage for his insurance dollar, is no less valid when the policy is unambiguous than it is when the policy is obscure.

*Id.* at 299, 422 A.2d 175. In addition, the *Hionis* rule has been applied numerous times by other Pennsylvania state and federal courts to preclude reliance by an insurance carrier on an exclusion or limitation in the policy. See *Daburlos v. Commercial Insurance Co. of Newark, New Jersey,* 521 F.2d 18 (3d Cir.1975); *Nationwide Mutual Ins. Co. v. U.S. Fidelity & Guaranty Co.,* 529 F.Supp. 194 (E.D.Pa.1981); *Cornwell v. State Farm Fire & Casualty Co.,* 527 F.Supp. 310 (E.D.Pa.1981); *Myrtil v. Hartford Fire Ins. Co.,* 510 F.Supp. 1198 (E.D.Pa. 1981); *Mattes v. National Fidelity Life Ins. Co., supra; Cardillo v. Nationwide Ins. Co.,* 17 Pa.D. & C.3d 299 (C.P.Washington Cty. 1980); *Rothfeld v. Mutual of Omaha Ins. Co.,* 16 Pa. D. & C.3d 180 (C.P. Philadelphia Cty.1980); *Cohen v. Erie Indemnity Co.,* 14 Pa. D. & C.3d 444 (C.P. Philadelphia Cty. 1980); *Bierly v. John Hancock Mutual Life Ins. Co.,* 13 Pa. D. & C.3d 40 (C.P. Dauphin Cty.1979).[9] Indeed, in *Prudential Property & Casualty Ins. Co. v. Mertz,* 39 Lehigh Cty.L.J. 430 (Feb. 5, 1982), the doctrine was utilized to render inapplicable an exclusionary clause in a homeowners policy identical to the one at issue here.

With respect to this issue, the Defendants have submitted the affidavit of Anthony V.

---

**8.** See *Mattes v. National Fidelity Life Ins. Co.,* 506 F.Supp. 955, 958–61 (M.D.Pa.1980), *aff'd without opinion,* 659 F.2d 1069 (3d Cir.1981), *cert. denied,* 454 U.S. 966, 102 S.Ct. 509, 70 L.Ed.2d 383 (1982), for a comprehensive discussion of the genesis and evolution of the *Hionis* disclosure doctrine in Pennsylvania insurance law.

**9.** The decisions have also recognized two exceptions to the *Hionis* principle: (1) where the insurer and the insured are of equal bargaining power, *Brokers Title Co. v. St. Paul Fire &* *Marine Insurance Co.,* 610 F.2d 1174 (3d Cir. 1979), and (2) where the facts demonstrate that the insured clearly had knowledge of the exclusion independent of any explanation offered by the insurer, *Miller v. The Prudential Insurance Co.,* 239 Pa.Super. 467, 362 A.2d 1017 (1976); *Treasure Craft Jewelers v. Jefferson Insurance Co.,* 583 F.2d 650 (3d Cir.1978). See generally *Mattes v. National Fidelity Life Insurance Co., supra,* 506 F.Supp. at 959–61. Selected Risks does not argue that either of these exceptions is pertinent to the instant case.

and Lucy C. Bruno, the pertinent parts of which states:

> "3. At no time was it ever explained to us by any representative of Selected Risks Insurance Co., that the policy contained an exclusion relating to intentional acts by the insured, which results in bodily injury which is expected or intended by the insured.
>
> 4. The first time that we became aware of such an exclusion was when it was explained to us by our lawyer, Barry Beemer, that Selected Risks Insurance Co., was refusing to defend our son, Anthony Bruno, Jr., in the lawsuit filed against him by the Joseph Whah Estate because of our exclusion in our policy denying coverage for intentional acts being committed by an insured. This explanation occurred after our son received the Complaint filed in the Court of Common Pleas on June 18, 1981." [10]

Additionally, Defendants offer the deposition testimony of Anthony Bruno, Jr. as proof that he has never read nor seen his parents' homeowners policy. Document # 11 at 43. With these sworn statements of record, the Defendants contend that this case falls squarely within the ambit of *Hionis* and its progeny and, thus, their carrier, Selected Risks, may not rely upon the policy exclusion to deny its contractual duty to defend.

In response, Selected Risks questions the scope of the *Hionis* disclosure doctrine in the factual circumstances of this case, *i.e.,* where coverage and a defense is sought by someone other than the named insured or actual purchaser of the policy. Specifically, it is argued that:

> "*Hionis* did not rule that insurance carriers have a duty to explain exclusions to all members of the household beyond the 'named insured' nor did it imply that 'fortuitous insureds' can benefit if the 'named insured' who purchased the policy was not advised of the exclusions. Simply put, it is inconceivable that a Court would require that an 'additional insured'

or a 'fortuitous insured' be found to be actually aware of policy exclusions in order for the carrier to rely upon such exclusions." [11]

No Pennsylvania decisional law or other authority is cited by Plaintiff to support this argument; rather, Selected Risks relies only "by analogy" upon *Brezan v. Prudential Insurance Co. of America,* 507 F.Supp. 962 (E.D.Pa.1981). After due consideration, however, we find Plaintiff's argument unpersuasive.

*Brezan* involved an exclusionary clause in a group insurance policy. Bamberger's Department Store, the employer of the Plaintiff's wife had purchased the policy and made it available to all its employees. When the question of the enforceability of an exclusion arose, the representative of the employee advanced the *Hionis* estoppel argument but the Court found the doctrine inapplicable in this context. It did so, however, based upon the unique nature of the group insurance contract.

> In the case at bar the party which purchased the insurance, Bamberger's Department Store, the employer of plaintiff's wife, cannot be classified as a layman unschooled in legal argot. Moreover, the group insurance policy issued to the employer does not appear to be an adhesion contract. Typically, insurance companies and organizations, not individuals, enter into group insurance contracts. The organizations who purchase such policies have more bargaining power than individual consumers. Usually people with acumen in business dealings and some expertise in insurance represent these organizations. Consequently, the parties negotiate the coverage, price and terms thereof at arm's length. The rationale supporting the *Hionis* rule finds no opportunity for enhancement under these circumstances; hence the rule does not here apply.

*Id.* at 966. See *Weiss v. CNA,* 468 F.Supp. 1291, 1293 (W.D.Pa.1979); cf. *Henning v. Metropolitan Life Insurance Co.,* 546

---

**10.** Document # 15 at 2.

**11.** Plaintiff's Reply Brief (Doc. # 16) at 2.

F.Supp. 442, 446–47 (M.D.Pa.1982). Consequently, the Court determined that the employer must "shoulder[ ] the responsibility for transmitting group insurance policy information to employees" and, in such a setting, the insurer has "no legal duty to guarantee that the policy information reached members of the group and that they understood the terms and conditions thereof." 507 F.Supp. at 966. In essence, then, the Court in *Brezan* applied the first exception to the *Hionis* principle, *i.e.,* the insurance company and purchaser possessed relatively equal bargaining positions and stood on comparable footing vis-a-vis negotiating the relevant terms of the policy.[12]

 Unlike the employer-insured in *Brezan,* the present Defendants, as was the case in *Hionis,* are "unschooled in insurance matters." The present homeowners insurance policy may therefore be regarded as an adhesion contract and treated accordingly by the Court.

> Insurance contracts have been viewed under the law as contracts of "adhesion", where the insurer prepares the policy for a purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the insurer . . . ." The policy behind this rule [construction against the insurer] is sound; the insurer wrote the policy, and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer."

*Hionis v. Northern Mutual Insurance Co., supra,* 230 Pa.Super. at 516–17, 327 A.2d 363 quoting *Eastcoast Equipment Co. v. Maryland Casualty Co.,* 207 Pa.Super. 383, 218 A.2d 91 (1966). See *Oliver B. Cannon and Sons, Inc. v. Fidelity and Casualty Co. of New York,* 519 F.Supp. 668, 672–73 (D.Del.1981) (applying Pennsylvania law). As the numerous state and federal decisions previously mentioned can attest to, it is in this setting of grossly disproportionate bargaining power between the parties that the public policy considerations underpinning the *Hionis* doctrine take on their greatest significance. We therefore first conclude that, in general, the *Hionis* principles are relevant and applicable here. It remains to be determined, however, the extent of the insurer's disclosure burden under the facts of this case. As previously noted, the insurance company's argument is essentially two-fold; it contends (1) that it has no duty to explain exclusions to all members of the household beyond the named insured, and (2) notwithstanding this, an "additional insured" cannot benefit from the *Hionis* rule even if the named insured was not advised of the exclusions. —We disagree with the broader implications of Plaintiff's second contention as we find it at variance with the *Hionis* rationale and unsupported by any decision of Pennsylvania law. See *Prudential Property & Casualty Ins. Co. v. Mertz, supra* (*Hionis* applied to require coverage for additional insured where named insureds not made aware of homeowners policy exclusion). Specifically, we believe that current Pennsylvania law would require that in order to satisfy *Hionis,* at a minimum the insurer must adduce proof that the named insured or purchaser of the policy "was aware of the exclusion or limitation and that the effect thereof was explained to him" 230 Pa.Super. at 517, 327 A.2d 363, irrespective of whether it is that party or an "additional insured" who is seeking coverage under the policy.[13] In this

---

12. See footnote 9, *supra.*

13. Indeed, this is consistent with the Court's reasoning in *Brezan, supra.* There it was found that the insurer had no duty to inform an employee directly of an exclusion in a group insurance policy because, in that context, the employer was the primary insured under the contract and, consequently, the need to protect the individual purchaser from overreaching by the insurer was minimized. It was still necessary, however, for the insurance company to impart the relevant policy information concerning exclusions and limitations to the employer who then must "shoulder the responsibility" of transmitting it to the individual employees. This is clear from the *Brezan* court's reference to the following passage from an early state court decision:

case, the uncontroverted affidavit of Anthony V. and Lucy C. Bruno, the purchasers and named insureds under the policy in question, establishes that no representative of the Plaintiff insurance company ever explained to them the meaning or effect of the policy exclusion which the carrier now attempts to invoke to deny coverage. See Document # 15, ¶¶ 3, 4. Accordingly, the Court concludes that under *Hionis* the exclusionary clause cannot be given effect and the Plaintiff's motion for summary judgment, premised solely on this exception, must be denied.[14]

A final procedural matter remains to be addressed. As is clear from the above discussion, the Defendants herein have not formally filed a cross-motion for summary judgment. Nonetheless, in a case such as this, where the parties concede that no genuine issue of material fact exists[15] but only a question of law which has been decided in Defendants' favor, it is well within the district court's discretion to enter summary judgment for the non-moving party. *Missouri Pacific Railroad Co. v. National Milling Co.*, 409 F.2d 882, 885 (3d Cir.1969); *Service Personnel and Employees of the Dairy Industry v. Carl Colteryahn Dairy, Inc.*, 436 F.Supp. 341, 345 (W.D.Pa.1977). See generally 6 Moore's, *Federal Practice*, ¶ 56.12 (2d ed.1976); 10 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2720 (1973). The Court will therefore grant summary judgment for the Defendants on the issue of the Plaintiff insurer's duty of defense and coverage under the policy. See *Cornwell v. State Farm Fire & Casualty Co., supra* (summary judgment for insured appropriate where requirements of *Hionis* doctrine not fulfilled); *Mattes v. National Fidelity Life Insurance Co., supra* (same).

An appropriate Order will be entered.

---

Having furnished to the party acting for and in behalf of the employees full and accurate information as to the terms of the contract it would make, the insurer would not be required to go further or be held responsible for the way in which the employer imparted the information to the employee for whom the employer was acting.

507 F.Supp. at 966 quoting *Duval v. Metropolitan Life Insurance Co.*, 82 N.H. 543, 546, 136 A. 400 (1927).

14. Having determined that the Plaintiff is not entitled to summary judgment on the present record, the Court need not consider the novel issue presented by Plaintiff's first argument, *viz.*, whether a similar result would follow in the situation where the insurer did notify the "named insured" of the existence and effect of an exclusion but not an "additional insured" under the same policy who seeks to rely upon *Hionis* to abrogate the enforceability of this exclusion. Specifically, with reference only to the individual-insured setting, we do not address the question of whether an insurance company has a legal duty to guarantee that policy information concerning the existence and effect of exclusions and limitations is made known to all possible insureds under the particular insurance contract.

15. Plaintiff's Motion for Summary Judgment (Doc. # 12), ¶ 2; Defendants' Status Report (Doc. # 7), ¶ 4.