# Anstead et al., Appellants, v. Cook.

*Contracts—Construction—Ambiguity — Parol evidence — Abandonment of contract.*

1. While it is true that, where a contract is susceptible of two constructions, one of which works a forfeiture, and the other does not, a construction will be adopted which will prevent forfeiture and preserve the rights of the parties, the ordinary meaning of words cannot be distorted to establish an ambiguity.

2. Parol evidence cannot be introduced to show the intention of the parties to a written contract, where the contract is not ambiguous.

3. It is always competent for the parties to a written contract to show that it was subsequently abandoned, in whole or in part, modified or changed, or that a new agreement was substituted for it; and this may be established by parol, by showing either an express agreement, or actions necessarily involving the alterations.

4. Where the effort is not to contradict the terms of a written contract, but merely to show a subsequent modification or waiver of something provided for in the contract, while the burden is on the party asserting the change, all that is required is that the evidence in support of the claim should be convincing to the jury.

*Judgment—Execution—Striking off judgment—Nonpayment of installments—Extension of time—Appeal—Practice.*

5. Where a judgment entered on notes for nonpayment of installments is stricken off, and it appears that the installments were due, but that the failure to pay them was the result of an honest disagreement, the appellate court, in reversing the order and reinstating the judgment and execution, will direct that time shall be allowed defendant to pay what is due before the execution may be proceeded with.

Argued September 26, 1927.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 143, March T., 1927, by plaintiffs, from order of C. P. Somerset Co., May T., 1926, No. 255, making absolute rule to strike off judgment, in case of Mary J. Anstead et al. v. Howard C. Cook.  Reversed.

Rule to strike off judgment.  Before BERKEY, P. J.
The opinion of the Supreme Court states the facts.
Rule absolute.  Plaintiffs appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Frank P. Barnhart,* of *Barnhart & Bender,* with him
*C. L. Shaver,* for appellants.—Under the terms of the
agreement, the notes were applicable to the property re-
leased and not on the semiannual payments.

Parol evidence was not admissible to aid in construc-
tion of the writing: Com. v. Cashman, 32 Pa. Superior
Ct. 459.

If parol evidence was admissible, the proofs were in-
sufficient to warrant opening and striking off the judg-
ment: Honesdale Glass Co. v. Storms, 125 Pa. 268;
Dixon v. Minogue, 276 Pa. 562; Humbert v. Meyers, 279
Pa. 171.

*Norman T. Boose,* of *Boose & Boose,* with him *J. C.
Lowry,* for appellee.—Where the parties make no appro-
priation of payments, the law will, and generally to the
first, or oldest indebtedness: Hollister v. Davis, 54 Pa.
508; Souder v. Schechterley, 91 Pa. 83; Risher v.
Risher, 194 Pa. 164; Seymour v. Sexton, 10 Watts 255.

OPINION BY MR. JUSTICE KEPHART, November 28,
1927:

Appellants, in their agreement to sell land fronting
improved public highways for $45,000, adopted the fol-
lowing plan of payment to accelerate marketing the
land.  In addition to appellee paying $1,000 on signing
the agreement, $4,000 in six months, and the same
amount every six months thereafter until the full sum
was paid, the land was divided according to location,
with a foot-front price.  Appellee could select any
given strip of lots, and, by paying the foot-front price
named in the agreement, could have such part conveyed

to him outright, released from any further claim under the agreement. Payments under this plan were termed "release payments" and their proper application, whether on the semiannual payments or on the purchase price of the land, raises the question at issue here.

Before the first payment became due, appellee availed himself of the privilege by purchasing some 786.93 feet at $22 per foot-front, the price being $17,312.46. Notes for $17,500 were given in payment and applied by appellants on the total sum due for the land generally. Nothing was paid on the first two semiannual installments, and appellant, averring this default, caused a judgment to be entered under the agreement for the full amount of the claim, less the hand money paid. Appellee, contending the notes should have been applied on the semiannual payments, had the judgment opened. Appellee, in lieu of a statement, filed a liquidation, allowing a credit of $17,500 on the sum due for the land. On reargument, the court below, believing the contract to be ambiguous, held that the correct interpretation of the contract required the notes should be applied as a credit on the semiannual installments; thus applied, there was no default, and for that reason the judgment was ordered stricken from the record. This appeal followed.

While it is true that, where a contract is susceptible of two constructions, one of which works a forfeiture and the other does not, a construction will be adopted which will prevent forfeiture and preserve the rights of the parties (13 C. J. 541) yet, the ordinary meaning of words cannot be distorted to establish an ambiguity. The contract in question is clear and logical, and presents no phase from which an ambiguity or two possible constructions may reasonably be found. The consideration paragraph required appellee to pay $1,000 down and $4,000 every six months. It then expressly provided that, when the hand money of $1,000 and two semiannual payments of $4,000 each, or $9,000, have been paid,

"the remaining semiannual payments......shall be decreased by the payments made on releases" (that is, land sold under the foot-front plan), and "when the full consideration......shall have been fully paid, either by means of the semiannual payments or by means of the release payments, then the deed for the part not then conveyed shall be made." The provision for "release payments" reads as follows: "In case the party of the second part [appellee]......should desire to sell any part......of the land......and secure [its] release from the operation of this agreement......it is agreed that the same shall be done......; (1) for any land fronting on the......concrete road......the parties of the first part [appellants]......will release and give proper deed......on the payment of twenty-two (22) dollars a foot-front......; and the same is to be applied on account of the purchase price as hereinbefore provided."

This arrangement was intended to give the vendors, appellants, a 20% margin on the selling price which must be paid notwithstanding what might be received from the sale of lots at the stated foot-front price. The money from such sales was to be applied on the total consideration generally in relief of future payments. As long as such total payments did not equal the balance of the entire purchase price, less the $9,000 payments, the first two installments could not be affected by release payments either in due dates or the amount. When these two semiannual amounts had been paid, then the money from the conveyance of parts of the ground could be used in reduction of other semiannual payments.

To adopt appellee's theory—that the amount paid for land conveyed under the release plan should be applied in reduction of the first two semiannual payments —would strip appellants of the most valuable part of their security. Appellee could force a conveyance of the best part of the ground at any time, leaving the less

desirable land as security without any additional means of recoupment for any loss which security the semiannual payments were intended to give. With this 20% margin of safety, a reasonably quick action was available against the vendee personally if in default; the land could not be withheld from them for a long period of time awaiting further action by appellee. Therefore, when the conveyance of the 780 feet was made, when no payment was due, the consideration could be applied only as the agreement directed. No payments having been made on any semiannual installments when due, there was a default, and the judgment was properly entered.

But it is asserted appellants waived their rights since they were not bound to release any land until $9,000 had been paid. The agreement does not support such a conclusion, and parol evidence could not be introduced to show that this was the intention of the parties where the contract was not ambiguous. There was no such condition in the agreement to be waived, and certainly none calling for the application of the fund realized from the foot-front sale to the semiannual payments as none were due when this conveyance was made.

Nor is the evidence offered or received sufficient to show that a different plan of payment was agreed on at the time the notes were given. It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified or changed, or that a new agreement was substituted for it. And this may be shown by parol, by showing either an express agreement, or actions necessarily involving the alterations. Where the effort is not to contradict the terms of a written contract, but merely to show a subsequent modification, or waiver of something provided for in the contract, while the burden is on the party asserting the change, all that is required is that the evidence in support of the claim should be convincing to the jury: Holloway v. Frick, 149 Pa. 178; Henry on

Evidence, section 369. "It is a general rule at common law that the parties to a written agreement may modify it by a subsequent parol agreement: Germantown Dairy Co. v. McCallum, 223 Pa. 554; Holloway v. Frick, 149 Pa. 178; Grace Contracting Co. v. N. & W. Ry. Co., 259 Pa. 241; Reber v. Brownback, 27 Pa. Superior Ct. 471. ......Here defendant's offer was to prove not only that the written contract had been modified by the parol contract, but also that for seven months thereafter the coke had been delivered, accepted and paid for under the latter; if so, it would be valid although not in writing. Of course the burden was upon the defendant to prove, by evidence convincing to the jury, the alleged parol contract (Achenbach v. Stoddard, 253 Pa. 338; and see Malone & Son v. R. R. Co., 157 Pa. 430)": Producers Coke Co. v. Hoover, 268 Pa. 104, 106, 107.

The testimony of Mr. Stephens, a member of the bar, that the $17,500 was in excess of anything due at the time by $100 or more was correct, as it appears that 786.93 feet at $22 per foot would make $17,312.46. This was the only money then due, and was on account of the payments at $22 per foot. As Mr. Stephens states, the difference of $187.54 was to be applied on future payments. But this evidence was insufficient to establish a subsequent variation of the terms of the writing. Furthermore, the receipt for the notes, executed when the release deed was delivered, stated that they were to be "applied on account of the land agreement."

An execution had been issued on the judgment, which the court below stayed when the judgment was opened; and, inasmuch as the failure to pay was the result of an honest disagreement, which, while not sufficient to disturb the writing, because of appellant's participation, it should not now be used oppressively by means of an execution.

We therefore reverse the order striking off the judgment, and direct that the record be remitted with instructions to reinstate the judgment and execution,

the pending rule to be dismissed, and appellee shall be given ninety days within which to pay the deferred installments; if not so paid, the execution may be proceeded with. Any lien secured by the judgment shall not be disturbed. Costs to be paid by appellee.