Bordo et al. *v.* Grayek (et al., Appellant).

Argued March 7, 1939.

Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and RHODES, JJ.

*John Memolo,* with him *Benjamin Weinstein,* for appellant.

*Stanley F. Coar* and *Carl Carey,* with them *David J. Reedy* and *T. A. Donahoe,* for appellees.

OPINION BY CUNNINGHAM, J., June 26, 1939:

On December 6, 1932, while James R. Bordo and Fred Catanzaro, the respective claimants in the above entitled workmen's compensation cases, were engaged in plastering a moving picture theater and office building, then under construction, the scaffolding upon which they were standing broke with the result that each suffered severe injuries—Bordo, a crushed heel, and Catanzaro, a broken pelvis and spinal injuries. Both were totally disabled at the date of the hearing and Catanzaro will be for an indefinite period.

Contending they were in the employ of E. B. Grayek and Joseph E. Golo at the time of the accident, each filed his claim for compensation for total disability under Section 306(a) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as further amended by the Act of April 13, 1927, P. L. 186, 77 PS §511. It developed in the course of the proceedings that E. B. Grayek was merely a financial backer of Joseph E. Golo and no award was made against him. At the hearing before the referee on May 5, 1933, the claims were consolidated and on August 3 of that year awards were made in favor of the respective claimants against Joseph E. Golo for compensation at the rate of $15 per week, beginning December 13, 1932, and to continue, within the limitations of the statute, until such time as a change in disability occurs. Golo appealed to the board; some of the findings of fact of the referee were set aside, and the board, substituting its own, affirmed

the awards. Upon Golo's appeal to the court below from the action of the board the record was returned to it for more specific findings upon one aspect of the case hereinafter referred to. When the record was returned with additional findings, judgments were entered upon the awards and we now have these appeals by the alleged employer from those judgments.

The ultimate issue is whether Bordo and Catanzaro, at the time of the accident, were employed by Golo in the regular course of his business, within the meaning of the statute, and as averred by them in their petitions, or whether, as contended by Golo, Bordo was an independent contractor and Catanzaro one of his (Bordo's) employees. It is conceded that Catanzaro cannot recover if Bordo was an independent contractor. As Catanzaro's right to recover will be governed by the conclusion reached with respect to Bordo's claim, we shall dispose of both appeals in a single opinion.

The controlling finding by the board upon the main issue reads: "That on December 6, 1932, James Bordo was in the employ of Joseph E. Golo as a journeyman plasterer and foreman with authority to employ Frederick Catanzaro and James Pariesi and to pay them for the number of hours worked with funds furnished by Joseph E. Golo."

We have examined the voluminous record for the purpose of ascertaining whether it contains competent evidence sustaining this finding; if so, it is immaterial whether we would have reached the same conclusion. There is evidence to the effect that the appellant, Golo, was for many years a chef but on May 31, 1928, was obliged by reason of ill health to abandon that occupation and was not engaged in any gainful employment until April, 1932, when, with the financial assistance of his father-in-law, E. B. Grayek, he decided to acquire a site and build thereon a moving picture theater and office building and to conduct the theater and operate the office portion of the building "for the purpose [as

stated by him] of making a business of it to make a living" for himself and his family. Upon the completion of the building in November, 1933, Golo rented the theater and other portions of the building to tenants and collected the rents. He was employed by the lessee of the theater as its manager. These activities constituted the only business in which he was engaged.

When plans and specifications for the building had been prepared, Golo arranged with his brother-in-law, Floyd Grayek, to act as his agent and supervisor and authorized him to enter into the necessary contracts. The plan adopted by Floyd Grayek was to award the contracts to various contractors for portions of the building and to do a part of the work himself with the assistance of employees hired by him.

On September 15, 1932, Floyd Grayek entered into a written contract with Bordo, Henry Krause, and Robert E. Smith, to do the lathing and plain plastering for $1,250. If the accident had occurred during the performance of this contract, Bordo could not have maintained his claim for compensation. The evidence, however, indicates that shortly after the execution of the contract and before performance thereof had commenced, the right of Bordo, Krause and Smith, who were journeymen plasterers and members of a labor union, to undertake to act as contractors was questioned. Bordo thereupon notified Floyd Grayek that the contract could not be performed and "told him to go out and get somebody else to do the job;" at the same time Bordo recommended Andrew J. Killian as a competent lather. On November 9, 1932, Grayek and Killian entered into an agreement by which Killian agreed to do the lathing for $250, and completed his part of the work.

Grayek then entered into a contract with Cosmo Iacovazzi and Victor Desierio to do the plastering for $1,200 and employed Bordo as foreman at the daily rate of pay fixed by the scale. After a couple of days the

work was stopped by a committee from the union. Grayek then authorized Bordo to hire journeymen plasterers to finish the work; Bordo employed Catanzaro and James Pariesi, referred to in the above quoted finding. Bordo testified none of the lathing or plastering was done under the contract of September 15, 1932, but, on the contrary, under his subsequent employment in November of that year as a foreman. While in the hospital following the accident Bordo received a check for $50 and another for $8.50, both of which he divided with Catanzaro and Pariesi, in proportion to the number of hours each of the three had worked on the job.

The board, in its opinion, indicated that the issue before it was whether under all the evidence the original contract of September 15, 1932, was merely modified by the undertaking between Grayek and Killian for the lathing and by the arrangement with Bordo relative to the plastering, or whether that original contract "had been abandoned altogether by mutual consent." The first formal finding of fact by the board reads: "That for sometime prior to December 6, 1932, the contract entered into between Bordo, Krause & Smith, and Floyd Grayek, had been abandoned by mutual consent." As a corollary of this finding the board also specifically found that Bordo and Catanzaro on the date of the accident "were employees of Joseph E. Golo."

If this were an action at law upon the contract we think the question whether or not it had been abandoned would be one of fact for a jury. It is competent for one of the parties to a contract to show that it was subsequently abandoned in whole or in part and this may be shown by parol, either by proof of an express agreement to abandon or by proof of acts of the parties from which the inference of abandonment naturally follows. See *Germantown Dairy Co. v. McCallum,* 223 Pa. 554, 72 A. 885, and *Anstead et al. v. Cook,* 291 Pa. 335, 140 A. 139.

We referred above to the return of the record by the

common pleas to the board for more specific findings. The court seems to have felt that, in addition to the inquiry whether Bordo was an independent contractor, it was a question in the case whether his employment had been merely "casual," and therefore returned the record to the board for specific findings with relation to that matter.

In so doing, the court below seems to have overlooked the fact that under the provisions of the statute and the decisions thereon an employee is not excluded from compensation unless his employment was both "casual" and "not in the regular course of the business of the employer." The plain language of Section 104 of the statute, 77 PS §22, is that the term "employe" includes "all natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer. ......" In order to exclude an employee under this exception it must appear that his employment was not only occasional and incidental, but also outside of the regular course of the business of the employer.

In accordance with the direction of the common pleas, the record was referred to a referee to take testimony and make specific findings. His findings upon the controlling question involved upon this branch of the case were to the effect that Golo had given up his former occupation of a chef more than five years before he undertook the construction and operation of the theater and office building; that the building was erected and equipped at a cost of $100,000; that Golo "devoted all of his working time to the building project making it his regular business for the period;" and that "the entire building project and subsequent rental thereof was intended by [him] to be his regular business for the purpose of enabling him to support his family."

In general, the term, "business," means some particular occupation or employment habitually engaged

in for livelihood or gain—a regular profession, trade or occupation. From the testimony to which we have referred we think it clear that the business, and the only business, in which Golo was engaged at the time of the accident was that of erecting the office building and theater which he intended to, and subsequently did, rent and operate, and that the employment in which Bordo was engaged at the time of the accident was in the "regular course" of that business.

The board affirmed the findings of the referee and returned the record to the common pleas for further consideration and disposition. In the final opinion, written for the court below by LEWIS, J., the evidence was reviewed and excerpts quoted at some length and the conclusion arrived at that it "is ample" to sustain the findings that the original contract was "abandoned by all the parties," and that Bordo was not an independent contractor.

After also reviewing the cases dealing with the question of "the regular course of the business of an employer," the writer of the opinion concluded "there was sufficient evidence to support" the findings of the referee, affirmed by the board, to the effect that the employment of Bordo was in the regular course of Golo's business. It seems to have been agreed by counsel for Bordo that his client's disability ceased on December 15, 1933, and a final judgment was entered by the court below in his favor for compensation for a period of fifty-two weeks, plus interest and hospital and medical expenses, making the liquidated amount of the judgment $1,050.02. In the Catanzaro case, judgment was entered in his favor in the sum of $6,500, plus medical and hospital expenses, but subject to such reductions and credits as may be proper if and when his disability decreases or ceases. See *Gardner v. Pressed Steel Car Co. et al.*, 122 Pa. Superior Ct. 592, 186 A. 410, and *Graham v. Hillman Coal & Coke Co.*, 122 Pa. Superior Ct. 579, 186 A. 400.

We are not convinced that any of the assignments should be sustained.

The judgments are severally affirmed.