### CITY OF PHILADELPHIA

v.

### DELAWARE COUNTY BOARD OF ASSESSMENT APPEALS

**Interboro School District, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1996.

Decided Feb. 28, 1997.

Reargument Denied April 24, 1997.

---

David L. Zicherman, Media, for appellant.

Alice W. Beck, Philadelphia, for appellee, City of Philadelphia.

Before McGINLEY and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

The Interboro School District (District) appeals from an order of the Delaware County Court of Common Pleas (trial court) granting summary judgment in favor of the City of Philadelphia (City) which is seeking to have an air mail processing facility (Building), owned by the United States Postal Service (USPS), taken off the tax roles in that county. We affirm.

In 1966, the City of Philadelphia (City) entered into an agreement (Agreement) with Delaware County, Tinicum Township, Tinicum Township School Board (predecessor to the Appellant, Interboro School District), and Delaware County Institutional District (collectively Tax Authority). This Agreement permitted the City to expand the boundaries of the Philadelphia International Airport (Airport) into the jurisdiction of the Tax Authority. Pursuant to that Agreement, the City is subject to real estate taxes on all buildings at the Airport, within the jurisdiction of the Tax Authority, that are used for private enterprise. Therefore, the City has tax liability for airline hangars, oil company facilities, and airline kitchens. Also, the City must pay a fixed annual rate for runways, roadways, and taxiways.

In 1988, the City entered into a lease agreement (Lease) with USPS for a period of eighteen years with renewal options, at the expiration thereof, every five years for twenty-five years. The USPS paid for the design and construction of the Building which it has occupied since 1992. This facility services Philadelphia, Harrisburg, Southeastern Pennsylvania, Southern New Jersey, and Wilmington, Delaware. The Tax Authority imposed real estate taxes on the City for the USPS Building. The City filed an appeal with the Delaware County Board of Assessment Appeals (Board) challenging the real estate tax assessment. The Board denied the appeal. The City appealed to the Delaware County Court of Common Pleas.

Before the trial court, all parties agreed to have the matter decided by motion for summary judgment under a joint stipulation of facts. The City argued that the Building was not subject to real estate taxes under the express terms of the Agreement, the Building was exempt from real estate taxes because it was public property used for a public purpose, and that the USPS Building was immune from taxation under the doctrine of intergovernmental immunity. The trial court granted summary judgment on all three theories.

The first issue raised by the District on appeal is whether conflicting interpretations of the terms of the Agreement give rise to a genuine issue of fact in determining whether the Building is subject to taxation under those terms as applied to the joint stipulation of facts.

Our scope of review of a trial court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. La-Barr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002, 1003 (1993). Summary judgment should only be granted in a clear case, and the moving party bears the burden of demonstrating that no material issue of fact remains. *Id.* at 1004. The record must be reviewed in the light most favorable to the nonmoving party. *Id.*

The District argues that the Agreement is ambiguous requiring the trial court to examine extrinsic evidence to interpret it. Consequently, there are various interpretations of the terms of the Agreement itself which yield a multitude of factual disputes thereby precluding a motion for summary judgment. Our Supreme Court stated that "the intent of the parties is to be ascertained

from the document itself when the terms are clear and unambiguous." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200, 519 A.2d 385, 390 (1986) (citing *Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982)). Extrinsic evidence is admissible, when an ambiguity exists in an agreement, to clarify or explain the ambiguity. *Id.* (citing *Herr Estate*, 400 Pa. 90, 161 A.2d 32 (1960)). However, "the court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact." *Id.* (citing *Easton v. Washington County Insurance Co.*, 391 Pa. 28, 137 A.2d 332 (1957)). Therefore, the specific issue is whether the trial court committed an error of law or abused its discretion when it determined, as a matter of law, that the terms of the Agreement were clear and unambiguous, thereby precluding the introduction of extrinsic evidence to explain those terms, and, after applying those terms to the joint stipulation of facts, determined that the City was entitled to summary judgment as a matter of law because there were no relevant issues of material fact remaining for resolution. We answer in the negative.

■ The District's argument requires us to examine several terms of the Agreement for ambiguity. The trial court's determination of whether certain terms within the Agreement are ambiguous is a conclusion of law. Therefore, the trial court's decision regarding each contested term is completely reviewable by this court. *Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90, 93 (Pa.Cmwlth.1995). Ambiguity in a contract exists when its terms are "susceptible of different constructions and capable of being understood in more than one sense." *Hutchison*, 513 Pa. at 201, 519 A.2d at 390. Absent such an ambiguity, the court must apply the plain meaning approach because it enhances reliability and it is not the province of the court to rewrite an agreement between two parties. *Steuart*, 498 Pa. at 49–51, 444 A.2d at 662–63. However, when determining whether a term is ambiguous, "a court must not rely upon a strained contrivance to establish one; scarce-

ly an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity. Thus, the meaning of language cannot be distorted to establish the ambiguity." *Id.* at 663 (citing *Anstead v. Cook*, 291 Pa. 335, 337, 140 A. 139, 140 (1927)).

■ The District maintains that the Tax Authority can tax any building constructed by the City on City owned property for the purpose of leasing to private tenants. Paragraph 6 of the Agreement provides the following:

> It is agreed by all parties [to this agreement] that all buildings which shall be constructed in the future by the City of Philadelphia on City owned property in Delaware County for the primary purpose of leasing to private tenants shall be taxable by the Delaware County taxing authorities signatory hereto.

The District maintains that there is ambiguity in the term "constructed in the future by the City of Philadelphia" and that the term means that the City only has to be a party to the construction and not the only party to the construction. Furthermore, the District maintains that the City was a party because it was intimately involved in constructing the Building. Although the USPS paid the cost of design and construction, the City had authority to approve or reject plans and designs, prescribe the size and configuration of the Building, and issue rules and regulations regarding the plan, design, and specifications of the building.

We find this argument to be without merit. The trial court found that this term was clear and unambiguous. Therefore the trial court was constrained to the "four corners" of the Agreement and the application of the plain meaning rule. In this regard, we agree with the trial court that the City was not involved in the construction. The City's supervision over the construction of the Building was within its police powers as a municipal authority to ensure the health, safety, and welfare of anyone who could be affected by the Building at the Airport. Additionally, the City was obliged to ensure that the Airport facilities maintained conformity with FAA

regulations. The City did not, therefore, affirmatively design or construct the Building within the plain meaning of the Agreement anymore than a municipality constructs a private building which has to conform to the local building code and zoning ordinances. Municipalities usually do regulate construction. This does not mean that they are a party to the construction. Given the scale and uniqueness of this project, the City merely set regulations that addressed issues specific to the project which were not addressed by existing building codes or zoning regulations. Therefore, The City was not involved in the construction of the Building, and there is no issue of material fact that the City merely proceeded within its municipal authority, rather than in a proprietary manner, with regard to construction.

■ Under Paragraph 6 of the Agreement, the District further argues that, because the lease agreement between the City and USPS will terminate and the City will eventually own the Building, there is enough of a question that the primary purpose of constructing the Building was to lease it to private tenants in the future to preclude summary judgment. However, the court cannot deal in such speculation. The primary purpose of constructing the Building was for USPS to distribute U.S. mail for at least eighteen years. This is clear enough.

■ The District further urges this court to read Paragraphs 6, 7, and 8 of the Agreement together to glean the intent of the parties as being that the USPS Building is subject to real estate taxes. Paragraph 7 provides the following:

> It is agreed by all parties hereto that all general service buildings, air terminals or portions thereof which shall be constructed and used as such, in the future by the City of Philadelphia on City owned property in Delaware County shall not be taxable by any taxing authority signatory hereto while actually used as a general service building or air terminal except as provided in paragraph 8 hereof.

Paragraph 8 further provides the following:

> It is agreed by all parties hereto that if such a significant portion of a general service building, air terminal or portion thereof which is constructed in the future by the City of Philadelphia on City owned property in Delaware County shall be leased to tenants for commercial purposes so as to make that building at lease self-sustained to the City considering all operating and debt service costs, then such building shall be taxable by the Delaware County Authorities signatory hereto. If requested, the City agrees to furnish the Delaware County authorities, annually, a sworn statement of income and expenses in connection with any such general service building.

The District argues that the USPS building is a self-sustained "general service" building subject to taxation under Paragraph 8 of the Agreement. We disagree. We first note that both Paragraphs 7 and 8 do not apply unless a building is constructed by the City. Accordingly, we previously concluded that the USPS Building here in question was not constructed by the City, and both of these paragraphs are inapplicable to the Building. Additionally, a general service building, although undefined in the Agreement, is one which serves the air traffic in and out of the Airport, one which serves the travellers moving through the Airport, or one which facilitates any of the dependent and support services ancillary thereto. Clearly, a building which has the purpose of facilitating the regional distribution of the mail away from the Airport is not a general service building that would qualify for taxation under the terms of Paragraph 8 of the Agreement.

■ Finally, the distribution of United States mail cannot be said to be a commercial purpose as used in Paragraph 8 of the Agreement. The plain meaning of the term "commercial" is that which has "profit as the primary aim." Webster's Third New International Dictionary 456 (1966). Black's Law Dictionary also defines "commercial activity" as that which is carried on for a profit. Black's Law Dictionary 270 (6th ed. 1990). The constitutional obligation of the federal government to provide a system of distributing mail for the people does not come within the meaning of commercial purpose in this case. In *Steuart,* our Supreme Court stated

that "the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart,* 498 Pa. at 48–49, 444 A.2d at 661. The parties' intent at the time they contracted is controlling. *Spatz v. Nascone,* 283 Pa. Super. 517, 532, 424 A.2d 929, 937 (1981) (citing *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1271 (3d Cir.1979)). Therefore, the plain meaning of the terms of the Agreement dictates that the obvious intent of the parties at the time of its execution was not to tax the USPS building. The District relentlessly seeks to attach ambiguity to terms in the Agreement which, under their ordinary meaning, preclude the taxation of the USPS Building.

If any lesson has been learned from the history of American politics, it is that some future unwritten intent of the elected officials of yesteryear is not only unreliable but also irrelevant as extrinsic evidence when the intent is discernible from the language within the four corners of the agreement. Further, it would be foolhardy to expect the elected officials of yesteryear to presume that their successors, twenty-two years after the date of a very formal agreement, would honor the speculative meaning of extrinsic evidence that is contrary to and not within the clear written language in the agreement.

Therefore, we hold that the trial court properly granted summary judgment in favor of the City of Philadelphia because there was no genuine issue of fact that the USPS building was not subject to real estate taxes under the terms of the Agreement. Because we affirm the trial court on this basis, we need not address the District's remaining issues because even a favorable disposition could not affect our holding.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, February 28, 1997, we hereby affirm the order of the Court of Common Pleas of Delaware County, filed November 2, 1995, at No. 93–18235.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that the USPS building is not a self-sustained "general service" building subject to taxation under Paragraph 8 of the Agreement.

As the majority notes Paragraph 8 of the Agreement provides:

It is agreed by all parties hereto that if such a significant portion of a general service building ... shall be leased to tenants for commercial purposes so as to make that building at lease self-sustained to the City considering all operating and debt service costs, then such building shall be taxable by the Delaware County Authorities signatory hereto....

Unlike the majority, I believe the terms of this paragraph are clear and unambiguous. Simply stated, Paragraph 8 provides that where significant portions of a general service building are leased and the rents derived therefrom are sufficient to make the building self-sufficient, i.e. no City funds are necessary to maintain the building, the building is taxable.

Here, the record reveals that USPS pays the City annual rents for the building ranging from $1,118,948.00 to $1,611,285.00. In addition, there is no evidence in the record which would support a conclusion that the City expends funds to maintain the building. Ergo, I believe that the USPS building is a self-sustaining general service building subject to tax under Paragraph 8 of the Agreement.

Accordingly, I would reverse the trial court's grant of summary judgment.